IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE F. JENKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 11-100-GPM |
| | ) |
| EAST ST. LOUIS HOUSING AUTHORITY | ) |
| and LEROY ESTES, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| LEROY ESTES, | ) |
| | ) |
| Counter-Claimant | ) |
| | ) |
| vs. | ) |
| | ) |
| TERRANCE F. JENKINS, | ) |
| | ) |
| Counter-Defendant. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. Background

Terrance F. Jenkins brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations

of his First Amendment rights by the East St. Louis Housing Authority ("ESLHA") and Leroy Estes.

Estes in turn has counterclaimed against Jenkins for assault and battery.  Currently, this matter is

before the Court on a motion for summary judgment brought by ESLHA and Estes (Doc. 28) and

a motion for partial summary judgment on the issue of liability brought by Estes with respect to his

counterclaim against Jenkins (Doc. 29).  The pertinent facts of this case are as follows.

On November 9, 2009, Jenkins was hired by ESLHA as a temporary maintenance mechanic.  Estes

was Jenkins's supervisor at ESLHA.  During Jenkins's employment with ESLHA, Jenkins was assigned to a project to install shower stalls in public housing in East St. Louis ("ESL"), Illinois, using federal "stimulus" funds.  While working on the shower-stall installation project, Jenkins complained to co-workers about the shoddy workmanship of various ESLHA employees working on the project.  Jenkins complained also that the work by his co-workers at ESLHA was being logged as completed, although later complaints by tenants of public housing in ESL disclosed that the logged work was not completed.

On July 7, 2010, Jenkins met with Qiana Bennett, ESLHA's human resources coordinator at the time, and Estes in a conference room at ESLHA's offices.  Bennett informed Jenkins that his employment with ESLHA was terminated on Estes's recommendation by reason of Jenkins's poor workmanship on the shower-stall installation project.  Jenkins responded to the news of his termination by assaulting Estes, punching Estes repeatedly and knocking him to the ground.  Estes was taken by ambulance to Memorial Hospital in Belleville, Illinois, where he initially was treated for his injuries.  Subsequently, Estes was treated by Dr. Graces, his family physician, Dr. Ferguson, an eye doctor, and Dr. Branham, an ear, nose, and throat specialist.  Estes suffered a broken nose as a result of the attack on him by Jenkins.  Estes saw Dr. David Brown, an orthopedic surgeon, for injuries that Estes had suffered to his hand as a result of the attack.  Estes also saw a psychiatrist for emotional problems arising from the attack.  Jenkins alleges that his termination by ESLHA and Estes was in retaliation for his criticisms of the execution of the shower-stall installation project. He seeks compensatory damages, including lost wages, costs, including attorney's fees, pursuant to 42 U.S.C. § 1988, and equitable relief reinstating Jenkins to his former position and expunging all record of Jenkins's termination by ESLHA.  Estes in turn seeks compensation for the injuries

allegedly inflicted on him by Jenkins, including medical bills, emotional distress, punitive damages, and attorney's fees.  The summary judgment motions before the Court have been fully briefed, and the Court rules as follows.

## II. ANALYSIS

### A.    Summary Judgment Standard

As an initial matter, the Court notes the standard under which it must evaluate a motion for summary judgment.  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, generally at any time until thirty days after the close of discovery in a case, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  The rule provides further that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion."  *Id*.  Under Rule 56, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the . . . presence of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1)(A)-(B).  The rule provides also that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  With respect to affidavits and declarations in support of, or in opposition to, summary judgment, Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In responding to a summary judgment motion, the non-moving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995). A genuine issue of material fact is not demonstrated by the mere existence of some alleged factual dispute between the parties or by some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 933 (7th Cir. 1997). Rather, a genuine issue of material fact exists only if a fair-minded jury could return a verdict for the non-moving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). In considering a summary judgment motion, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010); *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011); *Morfin v. City of E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003). In evaluating a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)) (brackets omitted). *See also Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir. 1994) (quoting *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25 (1966) ("In denying . . . a [summary judgment] motion, the court 'decides only one

thing – that the case should go to trial;' that denial 'does not settle or even tentatively decide anything about the merits of the claim.'").  With the foregoing standard in mind, the Court turns to consideration of the summary judgment motions before it.

### B.    Summary Judgment on Jenkins's Retaliation Claim

ESLHA and Estes argue that they are entitled to summary judgment on Jenkins's First Amendment retaliation claims.  To show unlawful retaliation for constitutionally-protected speech or conduct, a public employee must prove three elements:  first, that he or she engaged in constitutionally-protected speech or conduct; second, that but for the protected speech or conduct an employer would not have taken an adverse action against the plaintiff; and third, that the plaintiff suffered a deprivation because of the defendant's action.  *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010); *Gunville v. Walker*, 583 F.3d 979, 983 (7th Cir. 2009).  In the past controlling authority in this Circuit did not require but-for causation in a case involving alleged retaliation for the exercise of First Amendment rights.  *See, e.g., Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (a public employee can establish a prima facie case for retaliation under the First Amendment by "present[ing] evidence that:  (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action."); *Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)) ("[A] plaintiff who complains that he was retaliated against for exercising his right of free speech need not prove that, had it not been for that exercise, the adverse employment action that he is charging as retaliation would not have occurred.  All he need prove is that his speech was a 'motivating factor' in the employer's decision to take the adverse action.").  However, the

Page 5 of 12

Supreme Court of the United States clarified recently that, unless a federal statute provides otherwise, a plaintiff bears the burden of demonstrating but-for causation in suits brought under federal law. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (to prevail in an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the 'but-for' cause of the challenged employer decision."); *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) ("[T]he decisions which say that a plaintiff need only prove that his speech was *a* motivating factor in the defendant's decision [to retaliate] do not survive *Gross*[.]") (emphasis in original).

In retaliation cases, the United States Court of Appeals for the Seventh Circuit applies the two-prong *Connick-Pickering* test for determining whether speech is protected by the First Amendment. *See Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (citing *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563 (1968)).  Under the first prong of the *Connick-Pickering* test, the court asks "whether the employee spoke as a citizen on a matter of public concern." *Id*. (quotation omitted).  If the employee was speaking as a citizen on matters of public concern, the second prong of the *Connick-Pickering* test "requires a balancing of the employee's interest as a citizen in commenting on the matter against the public employer's interest 'as an employer in promoting effective and efficient public service." *Id*. (quotation and brackets omitted). In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the United States Supreme Court instructed that plaintiffs can prevail on a First Amendment retaliation claim only if they were speaking as citizens, not as public employees, when they engaged in the speech at issue.  In *Garcetti*, the Court held that

"when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421.  The *Garcetti* Court "reject[ed] . . . the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties.  Our precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job." *Id*. at 426.  Thus, *Garcetti* adds an extra hurdle for a plaintiff to meet at the outset, regardless of the content of the speech at issue, namely, that the plaintiff was speaking as a citizen not as a public employee.  *See Spiegla*, 481 F.3d at 965.  *See also Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008) ("*Garcetti* . . . requires courts to first decide whether a plaintiff was speaking as a citizen or as part of her public job, before asking whether the subject-matter of particular speech is a topic of public concern.") (quotation omitted).

The parties argue at some length about whether Jenkins's speech addressed a matter of public concern.  Jenkins argues that his speech addressed the issue of waste of federal stimulus money through shoddy and incomplete workmanship in installing shower stalls in public housing in ESL.  The Seventh Circuit Court of Appeals has recognized government waste as an issue of public concern.  *See, e.g., Chaklos v. Stevens*, 560 F.3d 705, 713 (7th Cir. 2009) (finding that a letter written by the plaintiffs protesting government waste addressed a matter of public concern).  ESLHA and Estes argue on the other hand that Jenkins's speech simply concerned personnel decisions that were not of public concern.  *See Trigillo v. Snyder*, 547 F.3d 826, 829 (7th Cir. 2008) (holding that *Garcetti* barred a plaintiff's claims where the speech in question was a report filed with the Illinois Attorney General about potential misconduct by an employee of the Illinois Department of

Corrections); *Mills v. City of Evansville, Ind.*, 452 F.3d 646, 647-48 (7th Cir. 2006) (a city police sergeant did not speak as a citizen when she told her supervisors that the police chief's plan to reduce the number of crime prevention officers under her command would not work; the sergeant was on duty and in uniform when she engaged in discussion with her supervisors after emerging from a briefing on the plan and spoke in her capacity as public employee contributing to the formation and execution of official policy); *Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 974 (7th Cir. 2000) (stating that "if every facet of internal operations within a governmental agency were of public concern, and therefore any employee complaint or comment upon such matters constitutionally protected, no escape from judicial oversight of every governmental activity down to the smallest minutia would be possible.") (brackets omitted).  Even if the Court assumes that Jenkins is correct that his speech addressed a matter of public concern, the Court nonetheless finds that Jenkins was speaking in his capacity as a public employee, not as a private citizen.  Jenkins was assigned by ESLHA to work on a project to install shower stalls in public housing in ESL, and Jenkins's criticisms of the way in which the project was being executed plainly were made in his capacity as a worker on the project.  *See Renken v. Gregory*, 541 F.3d 769, 774 (7th Cir. 2008) (holding that *Garcetti* barred a professor's claim that he was retaliated against for lodging complaints about the dean of students over a budget dispute, where the plaintiff was clearly speaking "as a faculty employee, and not as a private citizen"). The Court will grant summary judgment in favor of ESLHA and Estes on Jenkins's First Amendment claim.[1]

---

1.    Because the Court concludes that Jenkins's speech is not protected by the First Amendment, it is unnecessary for the Court to address the issue of, regardless of whether Jenkins engaged in protected speech or not, he nonetheless would have been terminated for physically attacking Estes, a matter that will be discussed in more detail in the next section of this Order.

C.      Summary Judgment on Estes's Counterclaim

The Court turns to the matter of Estes's motion for partial summary judgment. Estes seeks summary judgment on liability with respect to his counterclaim against Jenkins based on the physical attack that Jenkins allegedly made on Estes shortly after Bennett and Estes informed Jenkins that Jenkins was terminated from his position with ESLHA.[2] Jenkins argues that there is a genuine issue for trial on the counterclaim because he disputes whether or not he threw his termination papers on the floor, then punched Estes when Estes tried to pick the papers up. The Court does not agree. There is no genuine issue for trial on the matter of Jenkins's liability to Estes for assault and battery. Under Illinois law, "[w]ith respect to civil liability, an assault can be defined as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish v. Donahue*, 443 N.E.2d 786, 788

---

2.    It should be noted that, because Estes's counterclaim is a compulsory counterclaim, the Court is not obliged to inquire whether the counterclaim has a basis in federal subject matter jurisdiction or whether the Court should exercise supplemental jurisdiction over the claim. *See* Fed. R. Civ. P. 13(a); 28 U.S.C. § 1367; *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836-37 (3d Cir. 2011) (holding that a federal district court had subject matter jurisdiction over the defendants' territorial-law counterclaims following dismissal of all of the plaintiff's federal claims against them, even though there was no diversity between the parties with regard to the defendants' counterclaims for tortious interference with contract, where the diverse defendants were forced to file their breach-of-contract claims as compulsory counterclaims). In any event, even if Estes's counterclaim were brought in the Court's supplemental jurisdiction, the Court would retain jurisdiction of the counterclaim pursuant to the so-called "no-brainer" exception to the general rule that, once all of the claims over which a federal court has original jurisdiction have been dismissed before trial, any supplemental state-law claims should be dismissed or remanded to state court. *See Petroff Trucking Co., Inc. v. Illinois Dep't of Transp.*, Civil No. 11-241-GPM, 2011 WL 6026108, at **5-6 (S.D. Ill. Dec. 2, 2011). Under that exception, a federal court may retain jurisdiction of supplemental state-law claims where, as in this instance, the correct resolution of the claims is obvious. *See Holmes v. Back Doctors, Ltd.*, Civil No. 09-540-GPM, 2009 WL 3425961, at *5 (S.D. Ill. Oct. 21, 2009).

(Ill. App. Ct. 1982). *See also Hamilton v. Spraying Sys., Inc*., No. 02 C 9093, 2004 WL 2191330, at *16 (N.D. Ill. Sept. 28, 2004) (quoting *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994)) ("Illinois law defines civil assault as 'an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented.'"); *McNeil v. Carter*, 742 N.E.2d 1277, 1281 (Ill. App. Ct. 2001) (citing *Rosenberg v. Packerland Packing Co*., 370 N.E.2d 1235 (Ill. App. Ct. 1977)) ("A claim of assault must include an allegation of a reasonable apprehension of an imminent battery."). A "battery" under Illinois law is the willful, unauthorized touching of the person of another or a successful attempt to commit violence on the person of another. *See Hennessy v. Commonwealth Edison Co*., 764 F. Supp. 495, 507 (N.D. Ill. 1991) ("In order to prove a battery, Hennessy must establish that ComEd committed intentional acts resulting in offensive contact with Hennessy's person, and that Hennessy did not consent to such conduct."); *Hernandez v. Schittek*, 713 N.E.2d 203, 207 (Ill. App. Ct. 1999) ("A battery is an unauthorized touching of another's person."); *Kling v. Landry*, 686 N.E.2d 33, 41 (Ill. App. Ct. 1997) ("In order to state a cause of action for intentional battery, a plaintiff must allege a willful touching of another person without the consent of the person who is touched."). Here the undisputed evidence of record is that Jenkins seized Estes by the latter's belt, then proceeded to administer a vicious pummeling to him, with the result that Estes was obliged to seek medical care for various physical and emotional injuries.

Illinois law furnishes various defenses to claims of assault and battery, none of which are supported by the evidence of record in this case. For example, consent is a well-recognized defense to a claim of assault and battery. *See Wallace v. Alexian Bros. Med. Ctr*., 907 N.E.2d 490, 496

(Ill. App. Ct. 2009); *In re Estate of Allen*, 848 N.E.2d 202, 210-11 (Ill. App. Ct. 2006); *Cohen v. Smith*, 648 N.E.2d 329, 335 (Ill. App. Ct. 1995). Here, of course, there is no evidence that Estes consented to Jenkins's violent touching of his person. To the extent Jenkins may wish to argue that the termination of his employment with ESLHA provoked him to lay hands on Estes, it is well-settled under Illinois law that "mere words are not sufficient justification for the use of force." *Willhite v. Goodman*, 381 N.E.2d 68, 69 (Ill. App. Ct. 1978). *See also In re Pokorny*, 143 B.R. 179, 182 (Bankr. N.D. Ill. 1992) ("[V]erbal abuse, even an ugly assault on one's ethnic heritage, is not legal justification to pummel someone."). "[P]rovocation is not a justification for or a complete defense to an assault and battery action. In an action for assault and battery, provocation would not defeat the action except to the extent that it may be involved in the issue of self-defense." *Walker v. Dominick's Finer Foods, Inc.*, 415 N.E.2d 1213, 1215 (Ill. App. Ct. 1980) (citation omitted). A person is justified in defending him or herself, under Illinois law, if the person reasonably believes that he or she is being threatened with immediate bodily harm, so long as the person uses only such force as is reasonably necessary under the circumstances, or as may appear to that person to be, necessary. *See Brandon v. Village of Maywood*, 157 F. Supp. 2d 917, 934 (N.D. Ill. 2001); *Thompson v. Petit*, 691 N.E.2d 860, 864 (Ill. App. Ct. 1998); *Irwin v. Omar Bakeries, Inc.*, 198 N.E.2d 700, 703-04 (Ill. App. Ct. 1964). Here there is no evidence that Jenkins was addressed in an abusive or provocative manner by Bennett and Estes when he was terminated, or that Jenkins was defending himself against Estes. In sum, there is no genuine issue for trial as to Jenkins's liability to Estes for assault and battery. Therefore, Estes's motion for summary judgment on Jenkins's liability will be granted, and this case will proceed to trial solely on the issue of Estes's damages due to the assault and battery on him by Jenkins.

### III. CONCLUSION

The motion for summary judgment brought by ESLHA and Estes as to Jenkins's retaliation claim (Doc. 28) is **GRANTED**, and Jenkins's retaliation claim is **DISMISSED with prejudice**. Estes's motion for partial summary judgment on the issue of liability with respect to his counterclaim against Jenkins (Doc. 29) is **GRANTED**.  This case will proceed to trial solely on the issue of Estes's damages.

**IT IS SO ORDERED.**

DATED:  May 1, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge